is first to be heard. Council for Appellant. May we have you come forward, please? Your Honor, my name is Scott Ballinger. May it please the court. I'm the director of the Appellate Litigation Clinic at the University of Virginia School of Law, and it's my pleasure to introduce Mr. James Dion and Ms. Erin Sullivan, who will be presenting argument for Mr. Martin. Wonderful. Are they going to be splitting issues or splitting time? Mr. Dion will handle the opening argument of 10 minutes and Ms. Sullivan is going to take the rebuttal. Very good. Thank you. And thank you for your service to the court. So what did your parents say when you told them you were going to be a Cavalier? Well, they are in the background. So you could ask them yourself. They are, I think, pretty happy. I'm sure they're brimming with pride. Very good. So your colleague will handle rebuttal then. Yes. All right. Five minutes. Very well. Go ahead, sir. Thank you, Your Honor, and may it please the court. James Dion for the petitioner Dalil Mohammed. The case before the court today fits a familiar pattern. First, a Pennsylvania state court gives jury instructions in a first degree homicide case that invites the defendant to speak without considering every element of the charge defense. You'd like to go right to the merits I hear. Can we back up to exhaustion first? Yes. Sure thing. Let's make sure we know what claims are actually exhausted and are in front of us. OK. Is that the ineffective assistance of counsel claim appears not to be disputed to be exhausted? Am I correct? Yes. Let's talk about the due process claim. Yes, absolutely. What is the circumstances under which we can see that claim to be So in this case, exhaustion is not a high bar. So it simply requires that Mohammed put the state on notice that he's asserting a federal claim. And that's exactly what he did in this case. So starting from his first PCRA petition, Mohammed claimed that he was making an intertwined due process and ineffective assistance of counsel claim. And this is you can find this on the joint appendix on page 205. Was there a procedural default, though, by failing to raise the claim before the trial court? I'm sorry, before the trial court and then on direct appeal. So this claim is not procedurally defaulted. So counsel failed to object at trial. And so this court here has to find that counsel was ineffective for failing to do so. But Mohammed then on his first direct appeal proceeding pro se raised this issue on his first application for his first application to the PCRA court. Yes. And so he, as I said, this is this is not a high bar. And the the district court found this to be exhausted. The PCRA court didn't think that this was a problem. And he's been pressing this exact claim for the entirety of this litigation. And you say there's no procedural default. It's been exhausted because it's been presented on the PCRA review. Yep. At every level. Is that your position? Yes. Thank you. And so turning, turning quickly to to the merits that the instructions given in Mohammed's trial were unconstitutional for two primary reasons. The first is that the instructions misstated Pennsylvania law. And second, the likelihood of juror confusion was exacerbated by the rest of the trial record. So turning to the plain language of the instructions, the court unequivocally told the jury that they could convict without finding Mohammed's mens rea to kill. So in defining the elements of attempted homicide, the court told the jury clearly and explicitly that they should convict if if the defendant or an accomplice or a co conspirator did the acts with specific intent to kill. And in fact, our court has already looked at those very instructions and concluded they do not comply with federal due process. That's right, many times. And the reason that this court has held that is because quite clearly instructions like these can allow the jury to convict if they believe that either Mohammed or Cameron had the intent to kill. Let's assume that that you're correct. And the counsel was not competent. When he failed to object. Talk to me about prejudice. In light of the facts here. Let's talk before we talk about the merits of that argument. Let's talk about standard of review. Yeah. Do you agree that the PCRA court made a finding there was no prejudice? Yes. If you if in that case, then we owe at a deference to the court's finding on prejudice. So I would I would disagree that this court should apply and put deference to what the PCRA court did. So this I'm only focused on the prejudice part and I'm not focused on the competency part. I'll pretend we're on the same page. That's now I'm on the prejudice problem. Tell me about why at the deference isn't either. So in this case, the question for this court in terms of prejudice is not whether the jury could have found that Mohammed was guilty. It's whether they could have found anything else. So the principal problem with these jury instructions is that they allowed the the jury to convict without considering intent to kill. So a properly instructed jury may have been able to find that Mohammed had the intent to never required the court to make this finding. And on top of that, as what's the different result that you argue would happen if given proper instructions? So we contend that a juror who would have been able to convict who given the erroneous instructions would have been unable to do so if they were properly explained that they had to consider Mohammed's specific intent to And as this court has recognized, the principal problem with instructions like these is that they fail to differentiate between accomplice and co-conspirator liability for robbery and for murder. We recognize the your arguments concerning the deficits in the instruction. But Judge Greenway has a probing, I think, on the prejudice part. If we based on the facts as presented to the jury, what other result could be an intent to kill when you take the totality of the circumstances presented? And I know you know, the facts. So, so, so as, so as explained in our in Petitioner's reply brief at 16 to 21, there are several alternative explanations for the facts that the state presents as overwhelming evidence of Mohammed's guilt. And the problem is that the state knew that they had a problem here in finding intent to kill. And that's why they asked the court to give these instructions. And then in closing, the prosecution doubled down and encouraged the jury to find to find a guilty verdict based on these erroneous instructions. And they told you're not, you're not getting to the point that I want you to get to. Okay, let's focus on this. There's, there's a quantum of evidence, right, that the state argues amounts to such that there's no different result, right? Now, I presume, if you focus, the different results that are at least theoretically possible are a juror could hold out that specific intent wasn't met. That's a mistrial, right? Or a unanimous verdict of acquittal, right? Those are the only two choices, right? So, so that so we contend that because of the the instructions that it is there's certainly a reasonable probability that a juror who convicted under the instructions that they were given, given the facts and given our discussion, they would have been unable to convict if they were properly instructed on the elements of intent. Okay, great. So my question to you is this, let's focus on the quantum of evidence at the moment. One of the key pieces of into the other Klugel, Krugel, however you pronounce it, seven shots in the bank in the back, the back and presumably there was a turning at point blank range. Doesn't forget about the other evidence, doesn't that speak to an intent to kill? And wouldn't that preclude a different result? No, Your Honor. So a lot. So the evidence presented by the state as as we argue in our brief points either to Cameron as the shooter or is inconclusive. So none of the evidence that's that the state presents goes to Mohammed's intent to kill the expert testimony was that there had to have been two guns used because of the the actual guns used and the number of shots fired. So the so the forensics didn't test all the bullets. There were two shells found at the scene that the forensics never tested the because they were casings and the bullets were from a revolver. They don't have casings. So no one relied on them as being relevant. So the gun was never recovered. So this was this was speculation. The the testimony on the on the forensics never identified the weapon. And as we explained in our briefing, there are there are guns that reload quickly. There are revolvers that carry more than 10 rounds. And your brief, I should say your reply brief asked us for the first time to take some kind of judicial notice, I suppose, about the capacity of revolvers. Well, so I mean, I don't know where that's in the record. So whether we can consider that is not not certain. Let's just put it that way. But but back to Judge Greenway's point, his point is there was a boatload of evidence about the number of shots. There was evidence in front of the jury about that it was two revolvers that it was a revolver because of the lack of because of the nature of the gun. And the fact that the jury did not relate to this together with the solicitation of both of the individuals to leave the car and go to an isolated location. Aren't those facts the kind of facts for which a jury could only conclude the intent was to kill? So the jury, if they were properly instructed, could have possibly concluded that Mohammed had the intent to kill. But the problem with these instructions, as this court recognized, is that when they're not required to make that finding, then we have a due process problem. And this is not a case like Braunstein, where this court found that the instructions violated due process, but the error was harmless. And the reason that this court found that to be harmless is because the jury's other verdicts show that they had found the specific intent. It's not speculation. It's not specific intent. And that's what's different here. And so for all of these reasons, Mohammed is entitled to a new trial with competent counsel and instructions that accurately state the law. Thank you. You might not be done. Oh, I'm sorry. I saw my time was up. But just relax a moment. Oh, I'm happy to stay. I just wanted to save time for my co-counsel. No, don't worry. Okay. Counsel, how important is it in this court's evaluation of the forth by the Commonwealth that your client was found by the jury not to be in possession of a weapon? Thank you, Your Honor. So we find that to be extremely important. So the state's main theory as to why the error isn't harmless is essentially that they could have found that Mohammed was the shooter and inferred his intent to kill that way. But this is contravened by that exact verdict that Judge Kane just pointed to. The jury acquitted Mohammed of unlawful possession. Any case law tells us we should rely on that acquittal as probative of anything other than he was found not guilty. So I can't point to any specific case law, but I would I would say that that fact, in combination with Bronstein, is supports the idea that if the jury's other verdicts don't support this finding of intent, then this court shouldn't shouldn't find a harmless error analysis. And and as this court also explained in Smith, when the court should look to unconstitutional instructions when when making their decision, it's it's it's it's ridiculous for for the for the Commonwealth to then argue on appeal that the instructions they told the jury to rely on are now harmless. And so in this case, I think ridiculous is a little strong. Ridiculous probably is strong, but it is it's it's not fair to argue after telling the jury that they had they should rely on this to then turn around and argue that that the error is harmless. And so each of these errors was compounded by the state's reliance on the instructions. So this was a situation where the court gave unconstitutional instructions telling the jury that they could find that either Mohammed or Cameron had the intent to kill. And then the state told the jury that they should listen to that. And that's how they should find Mohammed guilty, not are there instances when there are there is sufficient evidence, despite the incorrect instructions, where we would conclude that despite that the error is harmless, and we should not grant relief. Certainly, Your Honor, if there if this was a situation in which we in which the state had presented evidence about an agreement between Mohammed and Cameron as to as to commit murder, then that's a case that that that this error wouldn't have been harmless. But in this case, the state doesn't present evidence of that sort, they simply rely on these generic co conspirator and accomplice liability instructions to correct an earlier misstatement of the murder charge. And, and in previous cases where this court has held there to be a constitutional violation, those instructions were worse, for example, in Bennett, in that case, the murder instructions were fine. And then this court found there to be a due process violation, because the accomplice and co conspirator instructions created this ambiguity as to how the jury could have reached their verdict. In this case, the state is arguing that general accomplice and co conspirator liability instructions should save otherwise incorrect murder instructions. So if this court was able to find that Bennett was a situation that violated due process, it should also find that in this case today, why, why should we engage in a reverse inference analysis? We contend that that you should not. So the the states are the PCRA courts main argument to this point is that the jury basically could have taken these generic co conspirator and accomplice liability instructions, and then use that to infer the correct intent for murder. And due process requires far more than relying on the jury's ability to solve a complicated logic puzzle. And and that's truly the state's best evidence as to how the jury could have reached this verdict constitutionally. And, and we asked that this court just stay consistent with its precedents and finding that that that's not enough. And, and and that's why this court explained it over many decades, starting with Smith, that that instructions that don't accurately convey the intent to kill are not up to the standard required by the Constitution. So we just asked the court to be consistent with prior precedents. Very good. Okay, very good. Thank you so much. Good morning, your honors. May it please the court if I may just keep this up here with me. I apologize. I'm a little horse today does not Corona related. It's snowing pollen, and I'm the Thank you, your honors. Again, may it please the court. My name is Ryan Lysett. I am here on behalf of a Pelley's Fayette SCI and Pennsylvania Attorney General. I am out of the Dauphin County District Attorney's Office. And I just want to commend you guys both for doing this. I have been doing this not for that long, but I know how difficult it is to come up here, especially as just being fresh out of law school. And I just can't imagine that I had one Superior Court state court argument that I did. And I was scared to death. So you guys are great and very pleasant smartest ever going to be there studying for the bar. Everything about everything. And I also feel your pain coming from California back here. So I went to Pepperdine undergraduate and I don't know why we make these choices coming back here. But all right, enough schmaltz. Sorry about that, your honors. Is there anywhere you'd like me to begin? Yeah, I'd like you to begin with. I'm going to jump to the merits person. I'm going to go back to exhaustion, but on the merits question, Tyson Smith, Bennett, Laird all looked at instructions that look just like this one. And our court has already held that these very instructions aren't these very type of instructions are so infected that they violate federal due process. I would attempt to distinguish our case, your honors, on the entirety of the instructions, um, as exerted by the district court, the trial court, state court. Actually, I don't want you to focus on the entirety of the instructions. I'd like you to really focus on this question, because it's four cases over the course of 20 years, which means to me that we've been rather consistent on this point. Right. So given that consistency, right, and given the fact that there's no way to err, um, why shouldn't we grant relief? So now you have all three of us sitting up in our chairs, ready for you to. Yes, your honor. I would say, um, lack of prejudice. Um, I don't know if you want to get into the entirety of that right now. I'm happy to do so. And also, um, this, this was not a good instruction as it were this excerpt, this quip. Um, but again, it was accurately defined in the remainder of the it was cured by this wasn't just one instance, right? I mean, if you had an instruction where there was like on page 21 on this one occasion, here's an incorrect instruction. That's not what we had here, right? I mean, consistency and bring the error to the four. When I was reading, reviewing this again for this matter, I, you know, saw the specific intent clearly defined. Um, a substantial step was defined. Problem with the is it was given both in the opening and in response to the jury questions. It's this element of the homicide charge that the defendant or an accomplice or a co conspirator acts with a specific intent. And the jury hears that twice. Once then, the primary instruction, then in response to their jury questions. Um, perhaps we should talk about prejudice. That would be, I would appreciate that. You're gonna talk about that before we do. So if you don't mind, I just want to just go real quick on this exhaustion and standard review. Like I was asking your adversary, um, what's your position with respect to whether the due process claim has been exhausted? I understand. Um, you know, pro se defendants don't have the benefit a lot of times. And we are more lenient to maybe say a court was put on notice by something that was raised, but it wasn't really the way that the state courts ended up, uh, resolving the issue. That's a different question. One is, did he present it? The second question I'm going to ask is what was resolved. So we know what our standard of review is, and then we'll talk about the merits. So do you concede that he presented both an ineffective assistance counsel claim and a due process claim to the PCRA courts? I do. Okay. Does the fact that that it's been presented in that way, does that satisfy a petitioner's requirement to exhaust? I would say is a strong argument as to that point, Your Honor. Let's move on then to the PCRA opinions. Again, it's focusing on the standard of review. Assume for the purpose of this discussion that the panel takes the view that our precedent makes clear that the instructions at issue are problematic and were reviewed under a standard, that difference in the federal standard for reviewing jury instructions, and therefore we're in de novo land for the purposes of the competency prong of Strickland and the due process piece of the due process claim. For a moment, stay with me. On the prejudice point, do we owe expedeference on the prejudice finding by the state court or is that de novo too? I would say that the federal and state standards as to prejudice, I can't really differentiate them. At the end of the day, was it harmless beyond a reasonable doubt? That's the due process claim and you didn't raise harmlessness in your brief. We'll talk about that in a second. I want to stay focused on the PCRA court for a second. I just want to focus on the ineffective assistance of counsel claim and the prejudice prong. Do you agree there was an adjudication by the state court on the prejudice prong? I do agree. Okay. Does that mean we're in deference to give deference to the findings on prejudice as well? I don't think that the appellant has rebutted anything with clear and convincing evidence and so I do believe it would be entitled to deference, Your Honor. All right. Now, I'll let you talk to us about prejudice unless my friends want to talk about procedure. I like prejudice. Okay. They're ready for prejudice. Tell us why the prejudice, there has been no prejudice by this instruction. Yes, Your Honors. Appellant was the one who knew the victim. In this case, arranged the whole deal, knew this victim, had, I believe it was around $2,400. You know, they're armed at the very least. That's not the facts. I thought Nicole had the $2,400. One of the victims, yes. Oh. And then, so. You said appellant had $2,400. Oh, I may have misspoke, Your Honor. I apologize if I did. Yes, appellant did not. He may have had $500 afterwards, but, you know, circumstantial evidence, the expert testimony revealed that more likely than not, again, we never recovered the gun, but based on the circumstantial evidence, there were two casings there, but there were at least 10 shots. It had to have come from two revolvers. They fled the scene right afterwards. They weren't observed trying to collect shell casings, assuming they could have even. Why is that Why isn't that consistent with robbery? That, two facts, Your Honor. The use of a vital weapon on the victim, use of a deadly weapon on the vital part of the victim's body, as well as the constant pursuit after shooting and continuing to shoot, both under Pennsylvania law, were allowed to infer intent to kill there. I'm so sorry. You said constant pursuit? Yeah. As I understood it, and correct me if I'm wrong, there are four men walking abreast to essentially circle back, open fire, and then jump them and take money. What's the you made it sound like it was, you know, chased them down and so forth. Maybe pursuit was obviously the wrong word. But, you know, the continuing to shoot after striking them, they were struck multiple times. And, you know, once you see he's been struck, I mean, you can accomplish the purpose of your robberies debilitated, you can jump on top of them, but continuing to shoot. Well, if the if the purpose was an intent to kill, you would agree that at point blank range, if they if the intent was to kill, those two men would have been dead. Possibly could have been a low caliber gun. They could have been terrible shots. They struck them, but they might have lucked out and just hit, you know, not center mass things that really wouldn't result in a death. And number one, you're a point blank range. Number two, at least with regard to Mr. Nicole, the shots were fired in a range that made it appear it could appear. And that's the only thing we're talking about. Reasonable probability. Right. So it could appear that there was no intent. Right. Because all we need in this analysis is to get to a different result in a different result is not one that requires a unanimous verdict of acquittal. It could be a mistrial. Yeah, you agree with that? Yes. OK. So three shots in the back, as I understand it, you'll tell me if I'm wrong. Right. One shot in the hip. Three shots in the stomach area, which probably means hit, turn, hit, which means if there was an intent to kill at point blank range. Person would be dead, I would think. But help me why that's not the correct way to look at this. I mean, we're we're entirely trying to define the intent at this point. Right. He could have he could have fired those shots and the pursuant pursuant to his intent to kill. And then he could have said they're sufficiently debilitated. Now, my intent is to recover the money. I know they have these $2,400. How am I going to get it if I kill them and it's not on them? I might not be able to go. Is it in the car? I don't know. Did they leave it somewhere else in the alley? I mean, we will never know what they do. And under Pennsylvania law, we're allowed to infer specific intent to kill based on their actions here. There were clearly revealed by the testimony and the injuries. I'm so sorry. What you just said is consistent with the opposite argument, right? If they if they wanted to make sure that they got the money, then you shoot as they did. Right. To debilitate, but not to kill. But a stomach shot can absolutely kill you. And we're assuming that they were accurately placing their shots. I've shot with police officers who are supposed to be. We don't we don't want to talk. That's not a good topic of discussion. They're not all John Wayne out here, you know. I mean, especially not, you know, we can see these days. I can ask a question about the due process claim. I didn't see anywhere in your brief an argument on harmless error. I cited the Chapman, Your Honor. Just that the citation, but that and what what analysis did you provide? Or are you asking us to rely on your prejudice analysis to equate to the same reason why harmless harmlessness existed? My it would be one of the same, Your Honor. Very good to us. Mr. Lysak, when I read the briefs, it was apparent to me that these defendants were tried together. But apparently that was not the case. Is that right? I would have to review the record again. I would be happy to submit a memorandum. I'm sorry. I don't recall your honor and I'd be happy to brief that I'd I apologize. The instructions that were given are normally given in a case where defendants are tried together. But that didn't happen here. So but you don't really know why that was. Could have been that he pled guilty. I'm not even this case. Oh, no, Your Honor. This was 2002. I would, I'd have a lot more gray hair by now. Although they're starting to form the facts that the PCRA court set forth and the facts in your brief are obviously horrific. But I read them very carefully. And every fact that you point to that shows intent to kill shows intent to rob. And I'm just wondering, like, which of those facts do you pull out to suggest to us that a juror would have found intent to kill? Going back to Pennsylvania law and the presumption when there is evidence that a deadly weapon was used on a vital part of the body were allowed to That's it. Mr. Muhammad went there. He had no gun. He arranged that he was well enough that they could call one another's parents and get phone numbers. He tells him, we're going to go to a secret place. We're going to go out of view of camera and police because this is a heavily patrolled area. So that negates the argument that there was intent to kill because the victim was taken down to a secluded area. Most of the simply a drug deal gone bad and an intent to only the same facts could also militate in favor, you know, against that as well. I mean, if you want to kill someone, you don't want to do it in broad daylight. You don't want witnesses. So you'd have the same incentive to go down a dark alley to do so. But even more so. But but when the facts, Judge Kane is pointing to your attention, the facts, the fact that these facts are equivocal, right? If they are equivocal, don't we have to come to a different conclusion? I argue that all the post hoc information, the consciousness of guilt would be allowed to consider it be considered in conjunction with that. And there are in my account, seven instances. And so all these things together, I don't think it's equivocal, Judge, my position would not be so. So so the different result, argument posed by your adversaries is outdone by what you deem to be overwhelming and unequivocal evidence. I understand your point. In my opinion, it is a strong case we have here. And, you know, going trying to imagine what the jury's what the law, the law that we have to apply, right, is that there would not be a different result, right? That's what Strickland et al say, right? So how do we come to that conclusion? When the facts as you've been discussing them seem equivocal? My position is that they're not so your honor, they are more incriminating for all the reasons I've said, the, you know, continuing to shoot and we don't know that he was intending to rob because he was only shooting down here. We don't know anything as to why those bullets hit him there. The jury was to find specific intent based on, you know, the uncontroverted evidence here that they were shot multiple times. You've got to play the game with us, right? The law is reasonable probability, right? So are you really saying to us that there's no reasonable probability that a juror could come to a different conclusion, but that there was specific intent to kill? It's always possible, your honor, and especially in Dauphin County for juries, jurors come up with wild verdicts. So that a concession? It's not a concession, your honor. Anything's possible. Thank you so much. Thank you, your honors. I appreciate it. Good morning, your honors. May it please the court. Aaron Sullivan, on behalf of Dhillon Muhammad. I want to start off, Judge King, you are correct that the defendants were not tried together. Secondly, there is no EDPA deference that should be because the court did not genuinely apply the federal standard to their decision on that regard. Well, how is that possible? They applied the wrong standard for federal purposes as it relates to the competency part, the merits of the jury instruction. My questions to your adversary and to your colleague were focused on the prejudice prong, which is the Strickland standard on prejudice, federal and national. Okay, correct. Secondly, turning to the discussion of the possession of the firearm and who the shooter was, the fact that Muhammad was affirmatively acquitted of possession of a firearm tells us that the jury didn't think that possession had been proved, meaning that any case law that tells us we can rely on a verdict by a jury that says it was not a proof of not guilty is sufficient to make that conclusion. Do you have any case law that says that? The most analogous case, Your Honor, would be Braunstein, as my co-counsel cited to. The fact is that without another affirmative verdict to inform us of what the jury believed the intent of the shooter to be, that coupled with the infirmed instructions and the repeated misstatement of Pennsylvania law to the jury shows that they were absolutely confused, as we saw when they asked the judge for clarification, and then it was doubled down on in the judge's clarification. How do you respond to your adversary's point that under, he represents that under Pennsylvania law, the continuous shooting, the repeated shooting is a valid basis with a deadly weapon to infer intent to kill? I'm sorry, could you repeat the question? How do you respond to your adversary's representation that under Pennsylvania law, continuous shooting using a deadly weapon is sufficient to infer intent to kill? Do you have a, do you have any response to that argument? I don't have any direct case law, Your Honor, but the evidence presented at trial was highly circumstantial, and the prosecution's case did not affirmatively, did not affirmatively establish that Muhammad was the shooter or that he had the intent to kill. I'd like to turn your attention to Smith v. Horn, in which this court held that it was more likely that Smith was the shooter in that case where there was a similar, there were similar facts of two, two defendants, a robbery gone wrong, a shooting, but no affirmative identification of the shooter. Actually had better facts than Smith, because Smith, you got a bunch of people saying Smith's that I shot him. Exactly. Smith wanted the ring. The facts in Smith actually help you. Exactly. Well, exactly. And that's my point. The fact is that even in Smith, this court found that the jury instruction was not harmless error, even on those facts. And so here, there is substantially more ambiguity about who the shooter was, and specifically whether Muhammad had the intent to kill. And so that coupled with the instructions, Smith sort of stands as this far marker for us. And our facts are certainly more favorable than those of Smith. So I wanted to get back to a question that Judge Swartz raised with you a moment ago. The PCRA Court's opinion says at 280 of the appendix, even if the trial court gave an ambiguous instruction, the defendant would still not have been convicted. And that suffices a ruling on Muhammad's federal claims. The federal standard required for harmless error is that there is a reasonable likelihood that the jury instructions confuse the jurors such that they reach their verdict unconstitutionally. So it's our position that that is exactly what happened. As my co-counsel said, we believe that jurors that found a conviction in this case, if they had been constitutionally instructed and the reasonable probability that they would not have been able to find a conviction in that case. And so that's the crux of the harmless error argument for us. A reasonable juror certainly could conclude that Cameron acted alone and without any prior agreement with Muhammad to do so. In several of this court's prior cases, the facts were just like this, as I mentioned in Smith. There were multiple people participating in a robbery. Someone gets shot. And this court has recognized that relief can still be available in those cases, because if it's not clear that the defendant had the intent to kill, then the jury instructions certainly underpin a due process violation. You agree with the notion that different results could be either an acquittal or a misdraft? I agree, yes. The testimony of that night was that Muhammad and Nickel, just to clarify from the earlier discussion, Muhammad and Nickel were walking together and that Cameron and Klugel fell behind. So there was no testimony that Muhammad specifically dropped behind. He was actually talking to one of the victims when they got shot. And as I mentioned, there was no conviction and the jury wasn't convinced that he was in possession of the firearm. So if the state's theory of the case is that we can infer Muhammad's intent to kill from him being the shooter, that falls apart based on that testimony. The problem is that sequence you just gave, I'm not going to debate you on whether I agree or disagree with that sequence. What I do know is the PCRA court made fact findings and nobody challenged those particular factual findings. And so we're not, nobody argued whatever it is in 2254 when you're dealing with, we got to reject fact findings unless there's clear whatever. I didn't really see that argument being made in this case. So sure. I see, I see that my time has expired, but wait one moment. Thank you. Okay. Your time has expired. Well, all right. Thank you so much. And again, we'd love to thank the University of Virginia Appellate Litigation Clinic. Of course, Mr. Ballinger, thank you for your guidance in that program. And thank you, of course, the now no longer students, right? Graduates, but not yet members of the bar. You've acquitted yourself quite well today. So much to be proud of, even the proud parents in the back. And we, of course, commend counsel for both sides on strong arguments today. And we'll take this matter under advisement.